## THE STATE ex rel. PEHLE, Collector, v. STAMM, Appellant.

### Division One, November 19, 1901.

1. **Taxation**: ASSESSMENT: FIXING VALUATION: BY ASSESSOR: BY AGREEMENT. The defendant listed his shares of stock in a building and loan association without placing any value thereon, but agreed at the time of delivering and swearing to the assessment list that the assessor was to get from the secretary of the association the value of his stock, which was ascertained to be $1,000. Defendant had valued all his other personal property, such as horses, watches, household furniture, etc., at $120, and this amount the assessor transferred to his personal assessment book, and there being no appropriate column in the book for the enumeration of such shares, he entered and assessed them to defendant in said book at the foot of the alphabetical list of taxpayers' names, valuing the same at $1,000. *Held, first,* that, the valuation having been arrived at in accordance with the agreement, the defendant ought not to be heard to question the validity of the assessment on the ground that he himself did not place any value on the stock, or for the reason that after delivering the list he did not receive any notice of the valuation fixed by the assessor; *second,* the act of the assessor in entering the personal taxes of defendant against the shares of stock and their valuation on one page, and his other personal taxes on another, in nowise affected the validity of the tax, such arrangement constituting at most a mere irregularity, which never affects the validity of the tax.

State ex rel. v. Stamm.

2. ———: ———: ———: BY ASSESSOR. The assessor is not bound, in his assessment of personal property, to the value fixed by the taxpayer in the list furnished the assessor, the law in that case being the same in regard to both real and personal property. The statute (section 7564, Revised Statutes 1899) provides that "the assessor shall value and assess all the property on the assessor's book according to the true value in money at the time of the assessment;" which manifestly includes personal as well as real property. The further provision of the statute requiring that "all other personal property shall be valued at the cash price of such property at the time and place of listing the same for taxation," is clearly nugatory, inasmuch as it precludes him from assessing property not entered by him in the assessor's book, and hence, this direction is inoperative for want of a subject-matter on which it can operate.

3. ———: ———: SEPARATE BOOKS: ORDER OF COURT. It is perfectly proper for the county court by order to authorize the assessor to make his assessments in two volumes, one the real and the other the personal assessment book.

Appeal from Franklin Circuit Court.—*Hon. Rudolph Hirzel,* Judge.

AFFIRMED.

*C. F. Gallenkamp* and *J. C. Kiskaddon* for appellant.

(1) "A tax is an impost or duty levied upon the owners of property, *in invitum,* for the support of the government. It can only be levied and assessed in the strict mode provided by the statute authorizing its levy and assessment. It is not even a debt in the sense that it can be collected in any ordinary suit at law, unless the statute specifically provides for that mode of collection. . . . . There is no such thing as an equitable or liberal construction of a statute creating a tax, or providing for its assessment of collection. On the contrary, all such statutes are strictly construed against the government, and they are to be strictly pursued by the officers of the government who act under them." State v. County Court, 13 Mo. App. 53; s. c., 84 Mo. 234; Carondelet v. Picot, 38 Mo. 130; Noll v. Morgan, 82 Mo.

App. 118; Railroad v. Apperson, 97 Mo. 305; Kansas City v. Railroad, 81 Mo. 293; State v. Snyder, 139 Mo. 553. (2) When a taxpayer delivers to the assessor a list of his personal property, with its value, he is entitled to rely upon the valuation he gives not being changed; and any such change in valuation, either by the assessor or the board of equalization, without notice to the taxpayer, avoids the assessment. Rich Hill Co. v. Neptune, 19 Mo. App. 438; State v. Spencer, 114 Mo. 578; Cape Girardeau v. Beuhrmann, 148 Mo. 203; Railroad v. Cass Co., 53 Mo. 17; State v. Railroad, 114 Mo. 11. (3) Conceding that the list given by the taxpayer in this case was false under section 7539, or defective for any reason, yet it could not be corrected without notice to the taxpayer. R. S. 1889, secs. 7535, 7536, 7537; Relf v. Insurance Co., 11 Mo. App. 379; State v. Spencer, 114 Mo. 578. (4) The assessment is to be in one book. The names of the owners of personal property are to be arranged alphabetically, with the property of each owner at the one place where his name appears, and not at two, or three, or any number of places to suit the convenience of the assessor. R. S. 1889, sec. 7553. (5) Section 7555, Revised Statutes 1889, does not apply to Franklin county, it being conceded that Franklin county has less than forty thousand inhabitants. R. S. 1889, sec. 7560. (6) It required an order of the county court to authorize the assessor to make his assessment book in more than one volume. Laws 1891, p. 193. (7) Where the law requires the assessment to be made in one book, if made in two it is invalid; *a fortiori,* if the law requires all the personal property of a taxpayer to be entered in the assessment book in one place, where his name appears arranged with respect to all other names in like case alphabetically, then an entry of it in two or more places would render the assessment void. State v. Cook, 82 Mo. 185; State v. Phillips, 102 Mo. 668. (8) The assessment is the basis of the tax, and if the assessment is void the tax is void. Abbott v. Lindenbower, 42 Mo.

State ex rel. v. Stamm.

162; State v. Railroad, 114 Mo. 1; Insurance Co. v. Charles, 47 Mo. 462; Railroad v. Maguire, 49 Mo. 482.

*Jesse H. Schaper* and *John W. Booth* for respondent.

(1)   The list required by sections 7531 and 7539, Revised Statutes 1889, is required to be made, not solely for the benefit of the property-owner making a list of his own property and of its value, but also for the benefit of all other taxpayers. Appellant having, in accordance with said sections, listed his ten shares in the building and loan association as a part of the taxable personal property owned by him on the first day of June, 1892, without giving the value thereof; and having by agreement at the time of delivering such list left it to the assessor to ascertain the value of the shares; and the assessor having ascertained and assessed the value of the shares in accordance with the agreement, appellant can not now be permitted to contest the assessment on the ground that he did not state the value of the shares in his list; nor on the ground that he did not, after his delivery of the list, receive notice of the valuation, of the shares, fixed by the assessor.   (2)   The decisions cited by appellant in support of his contention, that when a taxpayer delivers to the assessor a list of his personal property with its value, he is entitled to rely upon the valuation he gives not being changed; and in support of his contention that any such change, either by the assessor or the board of equalization, without notice to him, avoids the assessment, have no applicability to such a case as this in which the list, as made by the taxpayer omits no property liable to taxation, but gives the value of part only; and where, as here, this is followed by uncontradicted evidence that the property for which he gave no value in his list, was assessed by the assessor at a value ascertained in exact accordance with an agreement made between the taxpayer and the assessor at the time of the delivery of the list.   (3)   Although, for the reasons stated above, the decis-

ions cited by appellant are not applicable in this case, we call attention to the fact that those decisions are practically overruled in the case of State ex rel. v. Reed, 159 Mo. 77, decided by the Court in Banc. In that case it is held that section 7531, Revised Statutes 1889, does not authorize, nor require the assessor to accept the valuation fixed by the taxpayer upon his list. (4) The act of the assessor entering upon the personal assessment book on one page thereof and under suitable captions the name of appellant and a list of his personal property other than building and loan association shares, and entering on another page of said book, under suitable captions, the name of appellant and the shares owned by him in the building and loan association and the valuation thereof, constituted a mere irregularity in the assessment of personal property of appellant. Such irregularity does not excuse him from liability to pay the taxes so assessed on his building and loan shares, and constitutes no defense to this action. R. S. 1889, sec. 7563; State ex rel. v. Phillips, 137 Mo. 264.

ROBINSON, J.—Action to recover delinquent taxes on certain property of defendants for the year 1892 and 1893, brought to the circuit court of Franklin county, and tried by the court, a jury having been waived and judgment rendered in favor of the relator. From this judgment defendant has appealed to this court.

The essential facts of the case are these: October 14, 1892, the assessor of Franklin county called upon defendant, a resident of that county, and requested of him a list of his property for assessment. Defendant, in the presence and with the assistance of the assessor, at once made out a list of his taxable property coming within the purview of section 7531, Revised Statutes 1889, valuing the same at $120. It seems, however, that defendant owned certain shares in the Washington Building and Loan Association. The list was made out on a printed form, having blanks for the insertion of the number

of taxable building and loan shares owned by shareholders, and the value of each share. The list contained a statement that on June 1, 1892, defendant owned two shares in said association, but did not show the value thereof, the blank for valuing the same not having been filled out. The list was sworn to by the defendant.

The undisputed evidence shows that when the list was made out and delivered to the assessor, the defendant did not know the then value of said shares, and it was agreed between him and the assessor that the latter would obtain the value of same from the secretary of the building and loan association. In making up his "Personal Assessment Book," in the alphabetical list of names, the assessor set opposite the defendant's name the value that appeared on the assessment list as delivered to him by defendant, viz., horses, etc., watches, etc., household and kitchen furniture, and all other property, amounting in the aggregate to $120.

There being no appropriate column in the assessor's book for the enumeration of shares in building and loan associations, the assessor entered and assessed said shares to defendant in said book at the foot of the alphabetical list of taxpayers' names, valuing the same at $1,000, its correct valuation, such valuation having been arrived at by the assessor in accordance with the agreement between the assessor and defendant, at the time the shares were given in and listed as above mentioned. The assessment list of 1893 could not be found, but it was admitted on the trial to be the same as the list of 1892. It is, therefore, unnecessary to consider the assessment of 1893.

Defendant paid the taxes assessed against him on the valuation of $120 given in the list, but testified that he had no notice of the assessment of his shares with the building and loan association until the commencement of this action. At the close of all the evidence the defendant interposed a demurrer to the evidence, which was refused by the court, and defendant excepted. Thereupon defendant asked the court to declare the

law as follows: "If the court believes from the evidence that defendant returned the assessment list read in evidence, and thereafter had no notice that any addition to the valuation of his personal property had been made either by the assessor or by the board of equalization, then the verdict must be for the defendant," which the court refused and defendant duly excepted.

The particular question presented for adjudication involves the validity of the assessment of 1892 and 1893, as to defendants' shares in the Washington Building and Loan Association.

Counsel for defendant contends, first, that inasmuch as no valuation was placed on the shares of the building and loan association, in the assessment list as delivered to the assessor by the defendant, the action of the assessor in assessing same was without authority of law; and, second, that the assessment of said shares separate from the other personal property of defendant rendered such assessment void.

Under the provisions of section 7531, Revised Statutes 1889, the assessor is required, between the first days of June and January, to proceed to take a list of the taxable personal property in his county and assess the value thereof. For this purpose he shall call at the office, place of business or residence of each person liable to assessment and require a list of the taxable property owned by such person, and it is made the duty of each person so called on, to make, sign, swear to and deliver to the assessor a list of his taxable property, real and personal, stating therein the value of such property.

Section 7539 specifically provides that each person owning shares in a building and loan association, on which no loan has been obtained from the association, shall make and deliver to the assessor a just and true list of the same, with the actual cash value thereof on the first day of June of each year.

Section 7564 provides that "the assessor shall value and assess all the property on the assessor's book according to its

true value in money at the time of the assessment." This manifestly includes personal as well as real property, notwithstanding the provision requiring that "all other personal property shall be valued at the cash price of such property at the time and place of listing the same for taxation," which follows the preceding paragraph of this section. The last-quoted provision is clearly nugatory, inasmuch as property not entered in the assessor's book can not be assessed by him, the direction as to how such property is to be valued must necessarily be inoperative for want of a subject-matter on which it can operate.

By section 7571, the assessor is required to make out and return to the county court on or before the twentieth day of January in each year a copy of his book verified by his affidavit.

Section 7517 provides for a county board of equalization, and fixes the time and place of its meetings. Section 7518 and 7519 confer power upon such board to hear and determine complaints and equalize the valuation of both real and personal property, while section 7520 gives the board of equalization power to hear appeals from valuations by the assessor.

Under section 7572, every person who thinks himself aggrieved by the assessment of his property is given a right of appeal from such assessment to said board, and to guard against the loss of such rights, section 7573 provides for a court of appeals in case the board of equalization can not meet at the appointed time, and section 7574 provides that all appeals shall be determined in a summary way and the assessor's books corrected accordingly.

The scheme outlined by the statute above referred to evidently is, that all property subject to taxation shall be assessed by the county assessor, whose judgment as to the value thereof should control in the first instance. In order to enable the assessor to properly discharge his duties the State and county are to furnish him with lists and plats and the

property-owner with verified lists of his taxable property. To guard against an overvaluation by the assessor, the right of appeal is given to all persons believing themselves aggrieved thereby, and for that purpose a court of appeals is established to determine such appeals and correct the assessments accordingly. With a view of bringing the assessment to the attention of all persons assessed, the assessment is required to be filed in a public office accessible to every person, two months before the meeting of the court of appeals, the time and place of which is unchangeably fixed by law. To provide against undervaluation of individuals, a board of equalization is created, with power to equalize assessments by decreasing excessive valuation, and increasing valuations deemed too low.

The defendant having listed his shares in the building and loan association without placing any value thereon, and having by agreement at the time of delivering his assessment list left it to the assessor to ascertain the value thereof, and the latter having ascertained the value of such shares in accordance with the agreement, we think that defendant ought not now be heard to question the validity of the assessment on the ground that he did not place any value on the shares in the assessment list, or for the reason that he did not after delivering the list, receive notice of the valuation fixed by the assessor.

If to maintain the judgment rendered in this case, we should deem it necessary to assert, that the assessor was not bound in his assessment to the value fixed by the taxpayer in the list furnished the assessor (as appellant now asserts he was), we think ample authority is found therefor, not only in the statute itself and the adjudications of this court, but upon the plainest principles of reason and manifest necessity. In the recent case of State ex rel. Dobbins v. Reed, 159 Mo. 77, cited by appellant, it was held that the assessor is not bound by the value fixed by the taxpayer in the list delivered. It is true, the assessment in that case was of real estate, yet we are

Vol 165 mo—6

unable to perceive any such difference as prevents the application of the principle decided in that case, to the facts of this, and we think it is in point upon the question under consideration, although it is to be further said, that in the Dobbins case, it was suggested that the rule is different as to personal property, which, it says, "is required to be assessed according to its cash price at the time of listing same for taxation." But even if the provision of the statute upon which that dictum was evidently based was not inoperative, as above pointed out, that would afford no ground for conferring authority upon the assessor to assess real estate according to his own notion of its value, and of denying to him a like power as to personal property. It is not perceived that the clause of the statute providing that other personal property (whatever that may be) shall be valued at its cash price at the time and place of listing the same for taxation, cuts any more figure in determining when the assessment of personal property is made, than the provisions of section 7531, that real estate is to be valued, listed and assessed on the first day of June, 1881, and biennially thereafter, does to the question of when an assessment of real estate is made. The reference to that provision of section 7564 is all that appears in the Dobbins case, suggesting any difference as to the authority of the assessor, in reference to the assessment of real estate and personal property.

But much reliance is placed upon a line of decisions of this court, of which State ex rel. v. Spencer, 114 Mo. 574, is a type, to sustain the contention of the defendant. These decisions hold that, after an assessment of personal property is made, the assessor is without authority to increase the original assessment without notice to the taxpayer. As said, the present case really presents no question of an assessment being raised without notice. It is merely objected that the assessment as made by the assessor, assessed property that was actually included in the assessment list delivered by defendant to the assessor, but which the taxpayer failed to value, and which

at the time of delivering his list, he agreed should be valued by the assessor.

It is further argued as a ground of reversal of the judgment of the trial court herein, that the act of the assessor in extending the personal taxes of the defendant other than the share in the building and loan association on one page of the personal assessment book, and entering on another page of said book defendant's name and the number of shares owned by him in said building and loan association, and their valuation, invalidated the tax. There is no merit whatever in this contention. Such arrangement constituted, at most, a mere irregularity and in nowise affected the validity of the tax on his shares in the building and loan association. It is uniformly held by this court that mere informalities in making the assessment, or in the tax list, or in the assessment not being made or completed in the time required by law, do not affect the validity of the tax. The rule and the reason for it is well stated in State ex rel. v. Phillips, 137 Mo. 259, and a further discussion of the proposition at this time is, we think, unnecessary.

The remaining question to be considered is whether an order of the county court was essential to authorize the assessor to make his assessment in two volumes, one real and one personal assessment book. This procedure was amply warranted by the provision of section 7555, Revised Statutes, 1889, nor is this section affected by the Act of 1891 which authorized the county court, under certain circumstances, to make an order requiring such assessments in two or more volumes. In Thomas v. Chapin, 116 Mo. 399, it is said: "It is difficult to conceive of an act in the procedure for the collection of taxes .... that would be of less interest to the taxpayer than the question whether the evidence of the amount thereof was contained within the two lids of one book, or the four lids of two books. Requirements that do not affect the rights or interests of the taxpayers, but made simply for the purpose of securing

order, system and convenience in the dispatch of public business are directory in their character—a literal compliance with which is not essential to the validity of the law." To the same effect is State ex rel. v. Bank of Neosho, 120 Mo. 161, where the authorities are examined and the subject fully discussed. No good reason is perceived, therefore, why the number of books in which the assessment is made affects the legality of the assessment.

No error prejudicial to defendant on the merits is discovered and accordingly the judgment of the trial court will be affirmed. All concur.