THE STATE ex rel. CALDWELL, Collector, v. CHICAGO & ALTON RAILROAD COMPANY, Appellant.

Division One, December 17, 1901.

1. **Taxation:** OTHER THAN STATE, COUNTY AND SCHOOL, ETC.: RECITALS IN ORDER: PROSECUTING ATTORNEY'S PETITION. The statute does not require the order of the county court requesting the prosecuting attorney to present a petition to the circuit judge for permission to levy taxes in excess of those required for state, county, school and other current purposes, to specify the taxes that are to be included in the order of the circuit court. It is sufficient if the order shows that the county court was satisfied that there was a necessity for the assessment and levy of other taxes than those called for for those purposes. Nor does it require the prosecuting attorney in his petition to state the facts and give the reasons why such additional taxes should be levied.

2. ———: ———: PROSECUTING ATTORNEY'S PETITION: ORDER OF CIRCUIT JUDGE. In such case the petition of the prosecuting attorney and order of the circuit judge should show the several amounts of bonded indebtedness of the townships on which the extra assessment is to be levied, and the condition of the general county revenue as applicable thereto. But where they do not, but substantially show that a bonded indebtedness existed (the general revenue being inapplicable to its payment), they are sufficient to authorize an extra assessment by the county court on the townships to pay such bonded indebtedness.

3. ———: ———: RAILROAD INDEBTEDNESS: SEPARATE BOOK. The extra tax assessment provided by statute for paying township railroad bonds, must be entered in a separate book known as the railroad taxbook; otherwise the assessment is fatally defective.

4. ———: ———: ———: ———: DELIVERY BY CLERK: PROOF. In a suit for taxes by the collector, where it appears that the assessment was properly made and duly entered on the separate taxbook, his right to recover does not depend on affirmative proof of the delivery, by the clerk, of the taxbook to him.

5. ——— : ——— : INVALID ORDER: VOLUNTARY PAYMENT: REFUNDING: COUNTERCLAIM. Defendant voluntarily paid taxes assessed against it to pay township indebtedness in pursuance to an insufficient order of court, and the money was set aside to pay the bonds for which the assessment was made. and could be used for no other purpose, but afterwards the court issued warrants to defendant for the amount of its payment and ordered the county treasurer to refund the amount to defendant or pay the warrants, which he declined to do. *Held*, that in a subsequent suit by the collector for taxes for the payment of like township bonds, properly assessed, the defendant can not set up these warrants as a counterclaim, nor offset the tax-bills to the amount thereof, because the county court held no authority to issue refunding warrants in payment of taxes voluntarily paid to meet the just obligations of the township. The insufficiency of the order directing the assessment would have been a valid defense to a suit to collect the tax, but it is not a foundation for a suit to recover the money voluntarily paid in conformity to the assessment.

6. ——— : ——— : ILLEGAL SPECIAL LEVY: REFUNDING. Section 1809, Revised Statutes 1899, providing for the refunding of money collected under an illegal tax levy, in the treasury and under the control of the county court, does not apply to money specifically collected to pay township bonded debts, because that money can be applied to no other purpose, and is not under the control of the court, within the meaning in which those words are used in the statute.

Appeal from Pike Circuit Court.—*Hon. R. F. Roy,* Judge.

AFFIRMED.

*N. W. Morrow* and *F. Huston* for appellant.

(1) It is admitted by the parties to this action, that the taxes of 1894, sued for in plaintiff's petition as "for Buffalo township tax" and "for Cuivre township tax," are for the payment of bonds, township railroad bonds, of said townships, and the interest thereon, which bonds are known as "Refunding Railroad Bonds," and were not issued and negotiated until the year 1883. A fund to pay such indebtedness could only have been raised by compliance with section 7654, Revised Statutes 1889. State ex rel. v. Railroad, 87 Mo. 236; State

ex rel. v. Hager, 91 Mo. 452; State ex rel v. Railroad, 92 Mo. 157; State ex rel. v. Railroad, 97 Mo. 296; Andrew county ex rel. v. Schell, 135 Mo. 39.    The order of the county court of Pike county made in 1893, requesting the prosecuting attorney of said county to present to the circuit court or judge thereof a petition, asking for an order from said judge of the circuit court for the assessment, levy and collection of such other tax or taxes, as the circuit court or judge thereof may become satisfied should be assessed, levied and collected, did not specify the township taxes in question nor what taxes were meant, and is not in compliance with the requirement of section 7654, Revised Statutes 1889.    State ex rel. v. Railroad, 130 Mo. 243.    No such petition as the statute requires was ever presented by the prosecuting attorney of Pike county upon the request of the county court to the circuit court as prescribed in section 7654, Revised Statutes 1889, because the petition of the prosecuting attorney to the judge of the circuit court does not specify what taxes the county court requested the circuit court to order levied.    And no valid order such as is prescribed in section 7654, Revised Statutes 1889, directed to said county court, by the said circuit court, or the judge thereof, was ever made commanding the assessment, levy and collection of the taxes sued for herein.    It does not specify what taxes it was deemed necessary by the county court to request the circuit court to order the county court to levy.    It asks only for an order to levy and collect other taxes, without specifying what other taxes.    That is not the requirement of the law.    Sec. 7654, R. S. 1889; State ex rel. v. Railroad, 130 Mo. 243; State ex rel. v. Hager, 91 Mo. 452; State ex rel. v. Railroad, 92 Mo. 153; State ex rel. v. Railroad, 97 Mo. 296; State ex rel. v. Railroad, 87 Mo. 236; Kansas City v. Railroad, 81 Mo. 293; Railroad v. Apperson, 97 Mo. 300; Black v. McGonigle, 103 Mo. 202.    (2)    After the attempted levy of said taxes for the year 1894, the clerk of the county court of Pike county did not enter the same on

a separate taxbook, known as the railroad taxbook, as required by law, and in manner and form as prescribed by section 7733, Revised Statutes 1889. Sec. 7679, R. S. 1889. The failure to extend tax on separate book, to be known as railroad taxbook, or to deliver to the collector either, invalidates tax. State ex rel. v. Railroad, 117 Mo. 12; State ex rel. v. Hamilton, 94 Mo. 544. (3) The county court was authorized to refund the said taxes of 1892 so illegally collected and to issue and deliver the same to appellant under authority of Laws 1891, p. 196, now section 1809, Revised Statutes 1899. Cooley on Taxation (1876), 530. The act approved March 27, 1891, entitled "An act to provide for the refunding of money in counties where the same has been collected under an illegal levy," provided that "before any levy shall be considered illegal it shall have been so declared by the Supreme Court of the State of Missouri;" that the act when properly construed applies to and includes such levies of taxes as the Supreme Court has hitherto, by adjudication, declared and decided to be illegal when levied for the same purposes and under the circumstances as the taxes levied against the property of the appellant for the year 1892, and for the repayment and refunding of which the warrants pleaded by the defendant as a set-off to plaintiff's cause of action herein—were issued. On the basis of these facts and propositions the defendant contends that where the provisions of a law are inconsistent and contradictory to each other, or a literal construction of a single section would conflict with other sections of the act, it is certainly the duty of court, if it be possible, to harmonize the various provisions with each other; and to effect this it may be necessary to depart from the literal construction of one or more sections. State ex rel. v. Herman, 70 Mo. 451; 23 Am. and Eng. Ency. Law, pp. 418, 420; 1 Kent's Com., 463; Jackson v. Mayr., 33 Ga. 202; 1 Black Com., 89; State ex rel. v. Railroad, 87 Mo. 336; State ex rel. v. Railroad, 92 Mo. 152; State ex rel. v. Railroad, 97 Mo. 296.

*Ball & Sparrow* and *Pearson & Pearson* for respondent.

(1) The assessment and levy for taxes for the year 1894 was for Buffalo and Cuivre township tax. The order of record of the county court, the petition of the prosecuting attorney and the order of the circuit judge cover these items and authorize the levy made by the county court in pursuance thereof, and we insist that the levy made thereunder by the county court for the year 1894 is in strict conformity with section 9274, Revised Statutes 1899. (2) In the same connection we affirm the same to be true of the assessment and levy of taxes for the year 1892. While under the facts and pleadings in this case, the appellant having paid its taxes for the year 1892 without protest, respondent does not think that it is incumbent upon him now to show a technical compliance with the statute for that year, yet we affirm that the record shows affirmatively a compliance with the provisions of sec. 9274. (3) Since the adoption of the Constitution of 1875, bonds could not be issued in aid of railroads, and as there is no evidence in the record to show from what these bonds of 1883 were refunded, the presumption is that they are a part of the Louisiana & Missouri River railroad bonds mentioned in the order of the county court of Pike county and covered by the order of the circuit judge. (4) But if the court should hold that the assessment and levy of taxes for the year 1892 was illegal, still appellant can not, after having voluntarily paid its taxes without a word of protest, receive back the taxes it paid for that year. State ex rel. v. Powell, 44 Mo. 436; Walker v. St. Louis, 20 Mo. 143; Rubins v. Latham, 134 Mo. 469; Couch v. Kansas City, 127 Mo. 436. (5) The action of the county court in May, 1893, in attempting to refund the taxes paid by appellant in the year 1892, was absolutely illegal and void, because the county court had no authority to do so. The Supreme Court of this State had not declared the levy of 1892 in Pike county illegal.

Under section 1809, Revised Statutes 1899, it is specially pro-- vided "that before any levy shall be considered illegal, it shall have been so declared by the Supreme Court of the State of Missouri." It is also provided in said section "that the county court so refunding said money shall specify the time in which said money shall be refunded;" and it is further provided in said section that "the money collected is either in the county treasury or within control of the county court." Neither of these provisions of said section were complied with. (6) County warrants issued in 1892 can not be applied to the payment of taxes for the year 1894. State ex rel. v. Payne, 151 Mo. 663, overruling Reynolds v. Forman, 114 Mo. 509. Besides, section 9224 applies only to state and county tax and not to township taxes. R. S. 1899, sec. 9224.

VALLIANT, J.—This is a suit instituted by the tax collector of Pike county to recover of defendant certain taxes assessed for the year 1894. The assessment covers all the ordinary items such as taxes for state, county, schools, etc., and also an item of $958.67 as "Buffalo Township Tax," and one of $1,219.55 as "Cuivre Township Tax." Defendant paid all the assessments except these two items, which it refused to pay except in the manner presently mentioned, and this suit is to recover those items with statutory interest.

The answer admits that defendant was the owner of the property sought to be taxed and that the taxes were assessed as alleged in the petition. But it avers that the assessment was made by the county court without authority to do so, because the tax was for the payment of township bonds issued after 1879 and after the statute, which became sections 7653 and 7654, Revised Statutes 1889, had become the law, and the requirements of those sections were not complied with. The first of those sections provides for the assessment of taxes for state, county, school, etc., and the second limits the power of the county court in making other assessments, requiring

that before a tax for any other purpose is levied, an order of the circuit court must be obtained.     The answer also pleads "that the order of the county court of Pike county directing said levy was not made pursuant to section 7731, Revised Statutes 1889; that said county court did not make the necessary order or orders for the levy of said tax and the necessary entry or entries thereof on the records of said court; and that after the attempted levy thereof the clerk of said county court did not enter the same on a separate taxbook, known as the railroad taxbook, as required by law and in manner and form as prescribed by section 7733, Revised Statutes of 1889, and did not deliver said taxbook to the collector as provided by section 7735, Revised Statutes of 1889."

And for further plea it is averred that on December 10, 1894, defendant being then the owner and holder of two warrants issued by the county court of Pike county in May, 1893, one for $1,222.90, payable out of any money in the treasury to the credit of the Cuivre township fund, and the other for $947.70, drawn payable out of the Buffalo township fund, tendered those warrants to the tax collector, together with sufficient money to make them equal in amount to the taxes for those two townships, respectively, for 1894, in payment thereof, but the tender was refused.

The defendant has kept that tender good and renews it in his answer, protesting, however, that the tax demanded is illegal, and that the tender is made in a spirit of compromise. The answer then pleads the two warrants above mentioned as counterclaims and prays judgment against the county on the same, payable out of the respective township funds mentioned. The reply joins issue on the averments in the answer.     The cause was tried by the court, jury waived.

The evidence showed that the county court, on March 6, 1893, made an order which was entered on its record, reciting that the court was "satisfied that a necessity existed for the assessment, levy and collection of other taxes than the state

tax and the tax necessary to pay the funded or bonded debt of the State, the tax for current county expenditures and for schools, and requested the prosecuting attorney of the county to present to the circuit court of Pike county, or to the judge thereof in vacation, a petition asking that an order be made by the judge of the circuit court for the assessment, levy and collection of such other tax or taxes as the circuit court or judge thereof may become satisfied should be assessed, levied and collected." A petition was accordingly presented by the prosecuting attorney to the circuit judge in vacation, who made the order on which the county court founded its action in making the assessment for 1894, now in question. That order recited that the judge was satisfied that the necessity for such other taxes existed as follows: "A tax necessary to meet the outstanding obligations of Pike county, of Buffalo, Calumet, Cuivre and Peno townships on the bonded indebtedness of the same, together with interest thereon." It then proceeds to order an assessment of seventy cents on the $100 valuation in Buffalo and Calumet townships, eighty cents in Cuivre and Peno townships, and ten cents in the county, and that the order was to be continuous for the purposes specified until set aside, etc.

The evidence showed that there was a book kept in the office of the county clerk, which was known as the railroad taxbook, into which the taxes in question assessed against the railroad were entered and that the collector gave a receipt to the clerk for the same. But the record is vague on these two points. The evidence also showed that in 1892 a tax was assessed by the county court against the taxable property in the two townships mentioned, including defendant's property, to pay the outstanding bonds of those townships. That the only authority, if any, for the assessment, was an order of the county court April 7, 1879, reciting that the bonded indebtedness of the county amounted to $180,993, bearing ten per cent interest, besides other county obligations, and requesting

the prosecuting attorney of the county to present a petition to the circuit court for an order to make the necessary assessment. Such petition was presented and an order of the circuit court made directing an assessment on all the property in the county for the purpose of paying that indebtedness.

After the assessment of 1892 above mentioned was made, the bills for the same, amounting to $947.70 and $1,222.90 for Buffalo and Cuivre townships, were presented by the collector to the defendant and it paid them. Then in February, 1893, the defendant filed a petition in the county court representing that it had paid this tax and that it was illegal because there had been no order of the circuit court authorizing it, and prayed that it be refunded. Upon that petition the county court in May, 1893, ordered that the tax be refunded, and the warrants in evidence were issued for that purpose. These warrants, with a sufficient amount of money to make up the amount of the taxes here sued for, were tendered to the tax collector before this suit was brought, and the tender was refused.

The defendant asked peremptory instructions for a verdict in its favor on plaintiff's cause of action, and also on its counterclaims, and also instructions to the effect that the order of the county court of March 6, 1893, was not a sufficient compliance with the requirements of section 7654 to justify the judge of the circuit court in ordering the special tax assessment; that if the court should find that the county court failed to make an entry of the assessment on its records, or that after the assessment was made the clerk failed to enter it on a separate taxbook, known as the railroad taxbook, or if the court should find that the warrants were tendered in the manner hereinbefore mentioned, then the verdict should be for the defendant on the plaintiff's cause of action. Instructions were also asked to the effect that if the above-mentioned warrants were found to have been duly issued and were due and unpaid, defendant was entitled to recover on them, re-

spectively, in the two counterclaims. Also that if it was found that in 1892 a tax was assessed against defendant's property in these two townships, Buffalo and Cuivre, for paying the bonded indebtedness of those townships, and the assessment was made without the proceedings required in section 7654, Revised Statutes 1889, and no order of the circuit court authorizing it, that the taxbills on such assessment duly certified were presented to the defendant by the tax collector and payment demanded and defendant paid the same on the faith of the taxbills and the demand, believing them to be true assessments, and that afterwards, in 1893, the county court ordered those taxes to be refunded and issued the warrants above mentioned for that purpose, and they are now owned by defendant and are due and unpaid, then defendant is entitled to have them set off against the plaintiff's cause of action. Also an instruction that under the undisputed facts the taxes paid by defendant in 1892, for those two townships, were illegal and the county court was authorized to refund the same. All of which were refused. The finding and judgment were for the plaintiff on all the issues, and the defendant appeals.

I. The chief ground of objection made against the assessment of 1894 and that of 1892 is that they were not made in conformity to the requirements of section 7654, Revised Statutes 1889. As to the assessment of 1894, it is said in the brief for appellant that "the petition of the prosecuting attorney to the judge of the circuit court does not specify what taxes the county court requested the circuit court to order levied." And it is also said that the order of the county court, requesting the prosecuting attorney to take action, does not specify the taxes to be levied.

Section 7654 first forbids the county court assessing any other tax than the state tax and to pay for the state funded or bonded debt, the current county expenditures and for schools, except as therein specified, and then proceeds to lay down a

course to be followed when an assessment for other purposes becomes necessary. That course is for the county court, when it becomes satisfied that such additional assessment is necessary, to enter an order to the effect on its record, and request the prosecuting attorney of the county to petition the circuit court or judge in vacation to make an order ·directing such assessment and levy. The language of the statute is that the county court "being first satisfied that there exists a necessity for the assessment, levy and collection of other taxes than those enumerated and specified in the preceding section," shall enter on its records a request to the prosecuting attorney to petition the circuit court or judge, as above stated, and that the petition shall be so presented "setting forth the facts and specifying the reasons why such other tax or taxes should be assessed," etc.; "and such circuit court or judge thereof, upon being satisfied of the necessity for such other tax or taxes, and that the assessment, levy and collection thereof will not be in conflict with the Constitution and laws of this State, shall make an order directed to the county court," etc.

The statute does not in terms require the county court, in its order of request, to specify the taxes that are to be included in the order of the circuit court. It is sufficient if the order shows that the county court was satisfied there was a necessity for the assessment and levy of other taxes than those called for in the preceding section. It does require that the prosecuting attorney, in his petition to the circuit court, state the facts and give the reasons why such additional taxes should be levied. In the case at bar, the order of the county court recited that the court was satisfied that such necessity existed and requested the prosecuting attorney to present the petition to the circuit court or judge in vacation. The petition of the prosecuting attorney to the circuit judge following that order and referring to it stated that a necessity existed for the levy of taxes as follows, to-wit: "A tax necessary to meet the outstanding obligation of Pike county, of Buffalo,

Calumet, Cuivre and Peno townships on the bonded indebtedness of the same, together with the interest thereon, wherefore your petitioner asks for an order directed to the county court, commanding such court to have assessed, levied and collected such other tax or taxes as may be necessary, to-wit, seventy cents on the one hundred dollars in Buffalo, and Calumet townships, eighty cents on the one hundred dollars in Cuivre and Peno townships and ten cents on the one hundred dollars in Pike county."

In the order of the circuit judge which followed, is a recital that he finds that there is a necessity for "a tax necessary to meet the outstanding obligations of Pike county, of Buffalo, Calumet, Cuivre and Peno townships on the bonded indebtedness of the same, together with interest thereon, and the said judge in vacation as aforesaid finds and is satisfied that the assessment, levy and collection of said taxes will not be in conflict with the Constitution and laws of the State, wherefore," etc., then follows the order for the level.

We think that the petition and the order of the circuit judge would have more clearly conformed to the requirements of the statute if they had set out the facts showing the several amounts of bonded indebtedness, and the condition of the general county revenue as applicable thereto, but they substantially show that a bonded township indebtedness existed, and as the general county revenue, even if there was a surplus, could not be applied to that purpose, we think the petition and order are, as applied to the taxbills in question, sufficient to authorize the assessment.

As to the objection that the assessment does not meet the requirements of section 7731, Revised Statutes 1889, that objection is not specific. The answer on that point avers in general terms only that the order of the county court was not made pursuant to that section and that the necessary orders and entries on the records were not made.

The objection is also urged that there was no evidence

that the county court, after the order of the circuit court, made an order assessing the taxes in question. The answer of the defendant, however, rendered such evidence unnecessary. It avers more than once that the assessment was made by the county court, but says "that said taxes were levied and assessed by said county court without authority to do so."

It is also averred in the answer that the assessment when made was not entered on a separate book known as the railroad taxbook. If that was the fact it would be fatal to the validity of the assessment, for that is the record proof of the assessment, that the law requires. [State ex rel. Ziegenhein v. Railroad, 117 Mo. 12.] But the evidence does not sustain that plea. The assessment was entered in a book designed alone for such assessments and known in the county clerk's office as the railroad taxbook. That book was in evidence at the trial, but it is not before us in this record, and, therefore, how it was labeled or entitled we do not know. The objection at the trial seems to have been that it was not kept as a separate book for the railroad taxes for that year, 1894. The evidence was that it commenced in 1894, but was also used for the railroad assessments of subsequent years. The record does not show as much of that book as it should, if the validity of the tax in question is to depend on it. As far as the testimony goes the book seems to conform to the requirements of the law.

And it is also said that the book was never delivered to the tax collector as section 7735, Revised Statutes 1889, requires. That statute requires the clerk to deliver the book to the collector and take duplicate receipts therefor. The county clerk was called as a witness by defendant and asked: "Did you find a receipt for any taxbook from the collector for the year 1894? A. Yes, sir. Q. Have you it with you? A. Yes, sir." Then is shown a document which does not appear to be a receipt for such a book, but a tabulated statement of

taxes assessed against the L. & M. R. R. Co. in the form pre-scribed in section 7733, Revised Statutes 1889. The record does not give us sufficient light on this phase of the case.

If it was necessary for the plaintiff in this case to affirm-atively show that that book was delivered to the tax collector as section 7735 requires, he has failed to do so. But we will not say that the plaintiff's right to recover, the assessment being in all other respects regular, depends on his showing affirmatively that the book on which the tax was entered was delivered to him by the clerk. That question was before this court in State ex rel. Carter v. Hamilton, 94 Mo. 544, and was not decided; the judges sitting were evenly divided in opinion on it, and the case went off on another point. True it is, that book is the collector's warrant of authority for demanding pay-ment of the tax and it should be delivered into his hands be-fore he makes the demand, but in a suit for the tax, when it appears that the assessment was properly made and duly en-tered on the book, his recovery does not depend on proof of the performance by the clerk of the detail matter of deliver-ing the book to the collector. Whether the fact, if it was a fact, that the book was never delivered to the collector, would be a defense to the suit, is not for us to now decide, because the proof does not show that it was not delivered. We only now say that a failure on the part of the plaintiff to show affirmatively that the book was delivered will not prevent a recovery. We perceive no error in the judgment of the trial court holding that the assessment for 1894 was regular.

II. The most earnest insistence on the part of appellant is that the warrants isued to refund the tax paid in 1892 should be allowed to offset the taxes of 1894, and sued for. The tax of 1892 was assessed in violation of the terms of sec-tion 7654, above quoted. The order of the circuit court of May 17, 1879, whilst it was a continuing order, did not em-brace in its terms an assessment to pay township bonds. It only ordered a tax of four-tenths of one per cent on all taxable

property in the county to pay county indebtedness.    But when the tax of 1892, now complained of, was assessed there were outstanding against these townships refunding railroad bonds and that tax was assessed to pay them.    When that assessment was made the defendant came forward voluntarily and paid it and the money was set apart in the treasury for the especial purpose of paying those bonds.    Under those conditions the county court had no right to draw on that fund for any other purpose, and when it did so the treasurer was justified in refusing to pay the drafts.

In its petition to the county court in 1893 to refund the tax so paid, the defendant based its claim solely on the ground that the tax had not been levied in accordance with the requirements of section 7654, above referred to.    There was no claim made that the tax was not levied to pay a just obligation of the townships, for which all the taxable property in the township was liable, but only that the procedure prescribed by law had not been followed.

Whilst that would have been a perfectly valid defense to a suit to collect the tax, it is not a foundation for a suit to recover the money voluntarily paid in conformity to the assessment.    Taxes paid voluntarily, under those circumstances, can not be recovered.    [Walker v. City of St. Louis, 15 Mo. 563; State ex rel. v. Powell, 44 Mo. 436; Couch v. Kansas City, 127 Mo. 436; Robins v. Latham, 134 Mo. 469.]

But appellant is advised that by the Act of March 27, 1891, now section 1809, Revised Statutes 1899, the county court was given authority to refund money collected under an illegal levy and for that purpose to draw warrants upon the fund into which it had been paid.    Just what kind of an illegal tax that statute contemplates, whether the illegality has reference only to the subject of the tax itself, or embraces also taxes otherwise lawful but assessed in a manner not authorized by law, we need not now inquire.    The statute itself provides that it shall apply only when the money is in the

county treasury or under the control of the county court. If this had been money collected for general county purposes, its place would be in the county treasury, and it would be under the control of the county court, subject of course to the restrictions that the law imposes on that control. But here the money was collected for a particular purpose and the county court had no control of it except to devote it to that purpose. The tax was levied for a lawful purpose, imposed on property liable to the same and was within the limits of the law, but it was an illegal levy because it was not imposed in the manner prescribed by law. Still, when the taxpayer comes voluntarily to the collector and pays the money on that account, and it is by the county court set apart to that purpose, the rights of the creditor, for whose debt the tax was levied, attaches, and the county court no longer has control of the fund. Therefore, the act of the county court in issuing the warrants in question was without authority. This view of this feature of the case disposes not only of the question of set-off, but also of the defendant's counterclaims, without deciding the question of whether a counterclaim against the county can be pleaded in a suit of this kind.

We think the circuit court reached the right conclusion, and its judgment is affirmed. All concur.