**Kim LOVING and Cathy Loving, Appellants,**

v.

**CITY OF ST. JOSEPH, Missouri and St. Joseph Tennis Foundation, Respondents.**

**No. WD 39991.**

Missouri Court of Appeals, Western District.

May 10, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 28, 1988.

Application to Transfer Denied July 26, 1988.

Kim Loving, St. Joseph, for appellants.

George S. Murray, Asst. City Atty., St. Joseph, for City of St. Joseph.

Ronald S. Reed, Jr., St. Joseph, for St. Joseph Tennis Foundation.

Before MANFORD, P.J., and TURNAGE and COVINGTON, JJ.

TURNAGE, Judge.

Kim Loving and his wife, Cathy, filed suit against the City of St. Joseph and the St. Joseph Tennis Foundation seeking a declaratory judgment that fees charged for the use of municipal tennis courts were contrary to Article X, Section 22 of the Missouri Constitution. The court dismissed the cause for failure to state a cause of action upon which relief could be granted. Reversed and remanded.

The Lovings alleged that they were residents and taxpayers of the City of St. Joseph and that the City is a municipal corporation. The St. Joseph Tennis Foundation is a not-for-profit corporation. The petition alleged that the City is the owner of the Noyes Tennis Complex and that there was no fee charged for the use of the tennis courts located in the Noyes Complex when Article X, Section 22 of the Constitution was adopted on November 4, 1980.

The petition alleged that in May of 1987 the City Council authorized the city manager to enter into an agreement with the Foundation by which the Foundation was granted the right to manage and supervise the Noyes Tennis Complex. It was alleged that the agreement contained a schedule of fees for the use of the complex by members of the public and that the Foundation was required to collect such fees and remit a portion to the City. The petition alleged that the ordinance authorizing the agreement was passed for the purpose of raising revenue for the City and was a transparent attempt to evade the prohibition of Article X, Section 22 on the imposition of new fees by the City without a vote of the people.

It was further alleged that in May of 1987 the Foundation began the management of the Noyes Complex and imposed a fee on all persons using the complex. The petition prayed for a declaratory judgment to declare the ordinance void and to enjoin the City and the Foundation from charging a fee for the use of the tennis courts in the complex. The prayer contained a request that the City and the Foundation refund all fees collected for the use of the complex.

Loving contends the petition pleaded a cause of action when it alleged that the City, through its agreement with the Foundation, levied a fee for the use of the tennis complex without voter approval, contrary to Article X, Section 22. The city responds that the fee was levied by the Foundation and not the City and that, therefore, the constitutional ban does not apply because the constitution only forbids political subdivisions and not private groups or corporations from imposing a fee.

The agreement between the City and the Foundation provided that the Foundation would charge "proposed fees" for the use of the tennis courts in the Noyes Complex. The parties agree that the agreement between the City and Foundation did not constitute a lease but was simply an agreement by which the Foundation operated the tennis complex for the City. The Foundation was to handle the daily operation of the complex, collect the fees, and maintain accurate records. Any fees above the cost incurred by the Foundation were to be divided equally with the City.

The allegations of the petition are taken as true for the purpose of deciding whether or not the petition states a cause of action. It appears from the petition that the Foundation was nothing more than the agent or instrumentality through which the City charged fees for the privilege of playing tennis at the complex. Such allegation would support a finding that the Foundation was the mere agent of the City. However, the City contends that the Foundation collected the fees. *Lawrence v. Hancock*, 76 F.Supp 1004, 1008[4] (S.D.W.Va.1948), held that a lease of a municipal swimming pool constituted the lessee as a mere agent

or instrumentality through which the city operated the swimming pool for the purpose of excluding blacks. The court held that justice would be blind if it failed to detect the real purpose of the effort by the city to clothe a public function with the mantle of private responsibility. The petition alleges that the purpose here was to evade the constitutional bar to collect fees.

Such attempts at deception are as old as recorded history. The City contends the fees were collected by the Foundation and not by the City. This is reminiscent of the story of Jacob and Esau. Jacob clothed himself in his brother's clothing and put on goat skin gloves to deceive his father, Isaac. Isaac was suspicious and uttered the well known phrase, "The voice is Jacob's voice but the hands are the hands of Esau." [1] Unlike Isaac, this court can see that the hands collecting the fees were those of the City and not the Foundation, according to the allegations in the petition.

■ The Constitution would be impotent indeed if such a transparent effort could succeed in defeating a constitutional provision. In *City of Meadville v. Caselman*, 240 Mo.App. 1220, 227 S.W.2d 77, 80[4] (1950), this court quoted from *City of Washington v. Reed*, 229 Mo.App. 1195, 70 S.W.2d 121, 124 (1934), the familiar maxim that the City could not do indirectly what it may not do directly. The City may not collect the fee itself, so it cannot do so through an agent.

The City was expressly prohibited by the Constitution from imposing a fee for the use of the tennis complex without a vote of the people when such a fee was not in effect at the time the constitutional provision was passed. The petition alleges that the City violated this provision even though it attempted to hide such violation through its agreement with the Foundation.[2] Thus, the allegations that the City entered into the agreement in an attempt to get around the provisions of Article X, Section 22 stated a cause of action.

■ The City argues that if this court determines that the Foundation was the mere instrumentality of the City and that the collection of fees is prohibited by the Constitution, such prohibition should not extend to the use of the tennis courts because this is a proprietary act of the City. In *Roberts v. McNary*, 636 S.W.2d 332 (Mo. banc 1982), the court held that Article X, Section 22 applied to park and recreation fees levied by the county. Further, in *State ex rel. Askew v. Kopp*, 330 S.W.2d 882, 890 (Mo.1960), the court held that the distinction between governmental and proprietary functions of municipalities was developed by the courts to impose common law liability on municipal corporations for the negligence of their agents. Thus, the distinction between governmental and proprietary functions has little, if any, application outside of the tort liability of municipalities.

More importantly, Article X, Section 22 does not draw any distinction between governmental and proprietary activities. The prohibition of the section extends to levying any tax, license, or fee when none was in effect at the time the constitutional provision was adopted or to increasing such fees without a vote of the people. The constitutional provision is broad enough to cover all functions of a municipality and not just those of a proprietary nature. This is consistent with the purpose of the amendment contained in Article X, Section 22, which was to rein in increases in governmental revenue. *Roberts* 636 S.W.2d at 336[9].

■ The City further contends that the appeal should be dismissed because the issues have become moot with the expiration of the agreement with the Foundation in September of 1987. It is agreed that the agreement did terminate in September of 1987, but the Lovings contend that the case comes within the exception to the mootness doctrine, as stated in *State ex rel. Southwestern Bell Telephone Co. v. Public Service Commission of Mo.*, 645 S.W.2d 44, 51[6] (Mo.App.1982). That case held that

1. Genesis 27:22.

2. In argument before this court, counsel for the City candidly admitted that the agreement with the Foundation was an attempt to circumvent the constitutional provision.

the exception applies "to an issue of a recurring nature, of general public interest and importance, and which will evade appellate review unless the court exercises its discretionary jurisdiction." This case fits within the exception. If so motivated, the City could enter into any number of similar agreements, and by the time the issue of validity of one agreement reached this court, that agreement would have expired. This is a question of a recurring nature and is of public interest and importance. For that reason, this court will exercise its discretionary jurisdiction to decide the issues presented.

■ The City further contends that the petition did not state a cause of action for the recovery of fees paid. The petition does not plead in explicit terms that Loving paid a fee to use the tennis courts at the complex, although that would be a fair inference from the facts pled. However, as held in *Manufacturer's Casualty Ins. Co. v. Kansas City*, 330 S.W.2d 263, 265[1] (Mo.App.1959), the recovery of a license fee or tax based on an invalid statute or ordinance cannot be had if the payment was made voluntarily. This court further held that if the payment is deemed to be involuntary the payment of the tax may be recovered. *Id.* at [2, 3]. Here, there was no allegation that the tax was paid involuntarily, nor were there any facts pled to show that the payment was involuntary. For that reason, the petition does not state a cause of action for the recovery of the fees paid. However, on remand the court should allow an amendment to the petition if the Lovings desire to allege facts showing that the payment of fees was involuntary.

The judgment dismissing the cause of action is reversed, and this cause is remanded for further proceedings.

All concur.